**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| DUSTY JAMES COX, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 17-2500-KHV |
| | ) | |
| STEWART GROTE, D.O., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Dusty James Cox, a former inmate at Corrections Corporation of America in Leavenworth, Kansas, brings suit under state law and 42 U.S.C. § 1983 claiming that Stewart Grote, D.O., provided negligent medical treatment and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. This matter is before the Court on <u>Defendant Stewart Grote, D.O.'s Motion For Judgment On The Pleadings</u> (Doc. #10) filed November 22, 2017 and <u>Plaintiff's Motion To Amend Petition</u> (Doc. #16) filed December 28, 2017. For reasons stated below, the Court sustains in part defendant's motion for judgment on the pleadings and overrules plaintiff's motion to amend.

## Factual Background

Beginning in June of 2009, plaintiff was incarcerated at Corrections Corporation of America in Leavenworth, Kansas ("CCA-Leavenworth"). Beginning in November of 2009, Dr. Grote was plaintiff's primary healthcare provider. While at CCA-Leavenworth, plaintiff developed a rash. On January 9, 2010, plaintiff transferred to Golden Valley Memorial Hospital in Clinton, Missouri, where medical personnel diagnosed his rash as scabies. They successfully treated plaintiff's rash with permethrin cream.

In May of 2010, plaintiff returned to CCA-Leavenworth. Plaintiff showed Dr. Grote

medical records from Golden Valley which documented the successful treatment of his scabies infection.

In July of 2010, plaintiff developed a rash that appeared identical to his rash in January of 2010. On July 13, 2010, plaintiff told Dr. Grote that he believed he had contracted scabies again. Even so, Dr. Grote did not prescribe permitherin cream to plaintiff.

Plaintiff's rash grew and worsened. On September 28, 2010, Dr. Grote examined plaintiff. Dr. Grote again did not prescribe permitherin cream, but instead prescribed mometasone, a corticosteroid.

Plaintiff's rash persisted. On November 24, 2010, Dr. Grote examined plaintiff. Dr. Grote offered a treatment of Lindane but never provided it. Instead, Dr. Grote continued plaintiff on mometasone and added prednisone.

On February 10, 2011, plaintiff transferred from CCA-Leavenworth to a Bureau of Prisons facility. Plaintiff continued taking mometasone and prednisone until a physician could examine him at the new facility.

On March 10, 2011, Douglas Kruse, M.D. examined plaintiff. Dr. Kruse discontinued mometasone, prescribed a taper dosage of prednisone to wean plaintiff off of the drug and prescribed permetherin cream. After several treatments, plaintiff's rash healed.

Plaintiff subsequently began to experience pain and loss of range of motion in his left shoulder. On September 12, 2013, plaintiff was diagnosed with avascular necrosis in his left shoulder.

On October 16, 2013, Gregory Daus, M.D. examined plaintiff. Dr. Daus told plaintiff that the steroids which Dr. Grote prescribed had probably caused the necrosis. Plaintiff's necrosis continued to worsen with a total collapse of the humeral head. Dr. Daus told plaintiff that surgery

was necessary. Dr. Daus advised plaintiff that he would not perform surgery, however, because plaintiff had a methicillan-resistant staphylococcus infection and was on chronic suppressive therapy for the infection.

On March 7, 2014, plaintiff was diagnosed with avascular necrosis in both hips. On October 1, 2014, plaintiff was diagnosed with avascular necrosis in his right shoulder. Plaintiff has and continues to suffer great pain, suffering and disability associated with avascular necrosis in his shoulders and hips.

Plaintiff has filed three lawsuits related to Dr. Grote's care. On December 13, 2011, plaintiff filed suit against Dr. Grote and others related to his medical care in 2009 and 2010. See Cox v. Cunningham et al., D. Kan. No. 11-3215-SAC ("Cox I"). In Cox I, plaintiff did not assert claims involving medical care related to his scabies rash.[1]

On July 27, 2015, plaintiff filed suit against Dr. Grote related to his treatment of plaintiff's scabies rash in 2010 and 2011. See Civil Complaint (Doc. #1 filed in Cox v. Grote, D. Kan. No. 15-3189-CM ("Cox II")). Because plaintiff did not give notice of his lawsuit to the Kansas Healthcare Stabilization Fund, he asked to dismiss his complaint without prejudice so that he could file the required notice. See Plaintiff's Motion To Dismiss (Doc. #45) filed July 21, 2017. On August 8, 2017, the Honorable Carlos Murguia granted plaintiff's request and dismissed the action without prejudice. See Order (Doc. #47).

On August 30, 2017, plaintiff filed the instant action. See Petition (Doc. #1). Plaintiff

---

[1]      In Cox I, the Honorable Sam A. Crow dismissed plaintiff's complaint for failure to state a claim. See Order (Doc. #10 filed November 19, 2013 in D. Kan. No. 11-3215-SAC). Plaintiff appealed. On April 11, 2014, the Tenth Circuit dismissed the appeal for lack of prosecution. See Order (Doc. #19 filed in D. Kan. No. 11-3215-SAC).

asserts that Dr. Grote provided inadequate medical care because he (1) failed to timely diagnose and treat plaintiff's scabies infection; (2) improperly prescribed and treated plaintiff with prednisone; (3) failed to properly and adequately inform plaintiff of the risks of the high dosage or long-term use of prednisone; (4) improperly prescribed long-term use of mometasone which increased the amount of steroids administered to plaintiff and masked the scabies infection; (5) failed to timely follow up with plaintiff to determine the effects of the prescribed treatments; and (6) prescribed plaintiff steroids which were contraindicated for a person on chronic suppressive therapy for a methicillan-resistant stachylococcus infection. See id., Count I. Plaintiff also asserts a claim of cruel and unusual punishment under 42 U.S.C. § 1983. See id., Count II.

## Legal Standards

A motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., is governed by the same standards as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000); Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528 (10th Cir. 1992). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The specific allegations in the complaint must plausibly support a legal claim for relief. Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007). Rather than deciding whether a claim is "improbable," the Court determines whether the factual allegations in the complaint sufficiently raise a right to relief above the speculative level. See id.

(quoting Twombly, 550 U.S. at 556). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. Plaintiff bears the burden to frame his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough for plaintiff to make threadbare recitals of a cause of action accompanied by mere conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 679. Finally, the degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends upon the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

## Analysis

### I. Medical Malpractice Claim (Count I)

Defendant argues that the Kansas statute of repose, K.S.A. § 60-513(c), bars plaintiff's

medical malpractice claim.[2]  The Kansas limitations period for tort claims is two years.  <u>See</u> K.S.A. § 60-513(a)(4).   Kansas has a general statute of repose of ten years for negligence actions, but medical malpractice claims are subject to a four-year statute of repose.  <u>See</u> K.S.A. § 60-513(c) (no medical malpractice action shall be "commenced more than four years beyond the time of the act giving rise to the cause of the action").

Plaintiff alleges that Dr. Grote last treated him in February of 2011.   Accordingly, under the Kansas statute of repose, plaintiff had to file any medical malpractice claim action related to such treatment by February of 2015.   Plaintiff concedes that if applied, the Kansas statute of repose would bar his claim.   Plaintiff argues, however, that the statute of repose violates his rights to equal protection under Section 1 of the Kansas Bill of Rights.   <u>See</u> Kan. Const. Bill of Rights § 1 (all persons possessed of equal and inalienable natural rights including life, liberty and pursuit of happiness).

The Kansas Supreme Court has rejected an equal protection challenge to the statute of repose in K.S.A. § 60-513(c).   <u>Stephens v. Snyder Clinic</u>, 230 Kan. 115, 631 P.2d 222 (1981).   In <u>Stephens</u>, plaintiff asserted that K.S.A. § 60-513(c) created an arbitrary and discrimination classification for tort actions against healthcare providers and that such a classification lacked a rational basis.   <u>Id.</u> at 127, 631 P.2d at 233.   The Kansas Supreme Court held that a reasonable relation existed between the legislative objective of assuring continued quality health care in Kansas and the 1976 amendment which shortened the statute of limitations to four years from the date of the wrongful act.   <u>Id.</u> at 115, Syl. ¶ 9, 631 P.2d at 224, Syl. ¶ 9.   The Kansas Supreme

---

[2]        In diversity cases, the Court applies the statute of limitations which the forum courts would apply to the claims.   <u>See, e.g.</u>, <u>Miller v. Armstrong World Indus., Inc.</u>, 949 F.2d 1088, 1089 n.3 (10th Cir. 1991). The parties agree that Kansas law applies.

Court concluded that "the legislature has the authority to set statutes of limitation, that the classification of 'health care providers' for beneficial treatment is justified and reasonable, and without constitutional infirmity." Id. at 132, 631 P.2d at 236. In reaching this conclusion, the Kansas Supreme Court summarized the history and purpose of the statute of repose for medical providers as follows:

> The 1976 amendment to K.S.A. 60-513 was the legislature's attempt to assure continued quality health care for Kansans by combating the rapidly rising cost of medical malpractice insurance and the increasing reluctance of insurance underwriters to underwrite medical professionals. One of the principal causes of the increased costs and unavailability of medical malpractice insurance was attributed to the "long tail," or the length of time after the negligent conduct, allowed for the discovery of the injury and the filing of suit thereon. Medical malpractice insurance policies insure against liability arising from conduct while the policy is in effect. Because of the "long tail," or ten-year discovery period, under the prior statute, premiums were being calculated to include the possibility of claims on policies in effect up to ten years earlier. With the increased number of medical malpractice claims being filed, underwriting malpractice policies became unprofitable, with underwriters leaving the medical malpractice market. As a result, it was feared that doctors would be unable to procure insurance, or would be unwilling to pay exorbitant premiums, and would leave to practice outside of this state. Reduction of the discovery period was considered to be the obvious compromise to assure continued availability of malpractice insurance while protecting the injured parties' causes of action. The public interest in solving the medical malpractice problem is discussed in depth in State ex rel. Schneider v. Liggett, 223 Kan. 610, 576 P.2d 221. That discussion shows clearly that there is a reasonable basis for dealing with malpractice actions against health care providers in a different manner than in cases involving other tortfeasors.

Id. at 130-31, 631 P.2d at 234-35.

Plaintiff argues that Stephens does not bar his claim because the medical malpractice insurance crisis that existed 40 years ago has passed. In particular, plaintiff asserts that Kansas has no current need to curtail the "long tail" of medical malpractice claims because the Kansas Healthcare Stabilization Fund now requires that all policies be issued on a claims-made basis. Plaintiff's Memorandum In Opposition (Doc. #15) at 2. Plaintiff ignores the fact that the

transition from occurrence to claims-made policies occurred as part of the creation of the Health Care Stabilization Fund in 1976, well before the decision in <u>Stephens</u>. As part of its ruling on the constitutionality of the statute of repose, the Kansas Supreme Court necessarily considered the impact of claims-made policies on malpractice reform. <u>See</u> <u>Stephens</u>, 230 Kan. at 118-19, 631 P.2d at 226 (change in statute of repose part of "malpractice package" aimed at limiting liability of healthcare professionals); <u>see also</u> <u>State ex rel. Schneider v. Liggett</u>, 223 Kan. 610, 611, 576 P.2d 221, 223-24 (1978) (1976 amendment required provider to carry coverage for "all claims made" during annual period); Kansas Health Care Stabilization Fund, <u>History of the Health Care Provider Insurance Availability Act</u> (important feature of 1976 version of Health Care Provider Insurance Availability Act was requirement that carriers sell claims-made, rather than occurrence, coverage), available at <u>https://hcsf.kansas.gov/about/</u> (last accessed Aug. 1, 2018). Accordingly, any purported easing of the medical malpractice crisis because of the transition from "occurrence" to "claims-made" policies does not undermine the holding in <u>Stephens</u>.

Plaintiff also argues that the current cap on the recovery of non-economic damages undermines the need for a shorter statute of repose for medical malpractice claims. <u>See</u> <u>Plaintiff's Memorandum In Opposition</u> (Doc. #15) at 3. In 1988, to further limit the cost of medical malpractice insurance premiums, as a supplement to the original malpractice package, the Kansas legislature imposed a cap on non-economic damages. <u>Samsel v. Wheeler Transp. Servs.</u>, 246 Kan. 336, 340, 789 P.2d 541, 545 (1990). The fact that since <u>Stephens</u>, the Kansas legislature implemented additional measures to help address the medical malpractice crisis does not undermine the rationality of the legislative decision in 1976 that a four-year statute of repose for claims against medical providers would help assure continued quality health care in Kansas. <u>Stephens</u>, 230 Kan. at 130, 631 P.2d at 235 (reduction of discovery period obvious compromise to

assure continued availability of malpractice insurance and quality care while protecting injured parties' causes of action); Liggett, 223 Kan. at 611, 576 P.2d at 224 (low medical malpractice premiums necessary to ensure availability of medical service in all Kansas communities); see also Brubaker v. Cavanaugh, 741 F.2d 318, 321 (10th Cir. 1984) (rejecting equal protection challenge to Kansas statute of repose, agreeing with Stephens that rational relation exists between shorter limitation period for health care providers and legitimate objective of providing quality health care; plaintiff did not show legislature's "studied choice" irrational); Marzolf v. Gilgore, 924 F. Supp. 127, 129-30 (D. Kan. 1996) (Saffels, J.) (rejecting due process challenge to statute of repose in light of Stephens).   Plaintiff has not satisfied his burden to show that the statutory classification of medical providers in the Kansas statute of repose lacks a rational relationship to a valid legislative purpose.   Miller v. Johnson, 295 Kan. 636, 666, 289 P.3d 1098, 1119 (2012) (statutory classification must bear "some rational relationship" to valid legislative purpose).

Even if the need to provide some protection to health care providers has changed somewhat over the years, many courts continue to uphold statutes of repose specific to medical providers against equal protection challenges.   See, e.g., Ambers-Phillips v. SSM Depaul Health Ctr., 459 S.W.3d 901, 913 (Mo. 2015) (rejecting equal protection challenge to ten-year statute of repose, statute reflected reasonable balance between rights of injured parties and policy concerns in medical malpractice suits); Nichols v. Gross, 653 S.E.2d 747, 748-49 (Ga. 2007) (rejecting equal protection challenge to five-year statute of repose, statute did not reflect irrational legislative judgment); Fields v. Legacy Health Sys., 413 F.3d 943, 955 (9th Cir. 2005) (classifications in Oregon statutes of limitations and repose rationally related to legitimate legislative ends of avoiding stale claims and limiting costs of litigation and medical care).

In light of Stephens, the Court rejects plaintiff's argument that the Kansas statute of repose

for medical providers violates his rights to equal protection under the Kansas Bill of Rights. Because plaintiff did not file his claim within four years of the act which gave rise to his claim, the Court sustains defendant's motion for judgment on this claim.

## II.     Motion To Amend Medical Malpractice Claim

The Court shall freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Whether to grant leave to amend is a matter of discretion for the trial court.  See Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991).  The Court should normally refuse to grant leave to amend only upon a showing of futility, undue delay, undue prejudice to the non-moving party or bad faith of the moving party.  See Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993).  A district court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or otherwise fails to state a claim.  See Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir. 1992).

Plaintiff's proposed amended complaint seeks to add a claim that the statute of repose for claims against medical providers violates his rights to equal protection under Section 1 of the Kansas Bill of Rights.  For reasons stated above and in light of Stephens, plaintiff's proposed claim is futile because it would not withstand a motion to dismiss for failure to state a claim.  See Ketchum, 961 F.2d at 920 (court may deny motion to amend as futile if proposed amendment fails to state claim).

## III.     Section 1983 Claim (Count II): Statute of Limitations

Because no federal statute of limitations exists for Section 1983 actions, courts look to analogous state laws and the applicable state statutes of limitation to determine the appropriate time limit for filing a particular Section 1983 action.  Baker v. Bd. of Regents of Kan., 991 F.2d 628, 630 (10th Cir. 1993).  As noted above, under Kansas law, a two-year statute of limitations

applies.  See K.S.A. § 60–513(a).  Federal law, however, controls when a federal cause of action accrues.  See Wallace v. Kato, 549 U.S. 384, 388 (2007).  The standard rule is that a cause of action accrues when plaintiff had a complete and present cause of action, that is, when he could have filed suit and obtained relief.  Id.  In other words, a Section 1983 action accrues when facts that would support a cause of action are or should be apparent.  Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006).

In light of the objective and subjective elements of an Eighth Amendment claim, plaintiff's claim accrued when he knew or had reason to know that defendant had acted with deliberate indifference to a known risk to his medical needs, and that defendant's deliberate indifference caused plaintiff substantial harm.  Vasquez v. Davis, 882 F.3d 1270, 1275-76 (10th Cir. 2018).  The claim accrues once plaintiff knew that defendant's deliberate indifference had caused him substantial harm, "even though the full extent of the injury is not then known or predictable."  Id. at 1276 (citing Wallace, 549 U.S. at 391 (internal quotation marks omitted)).

Defendant argues that plaintiff's Section 1983 accrued in February of 2011, when he transferred from CCA-Leavenworth, where Dr. Grote provided care.  The allegations in plaintiff's complaint, however, do not establish that when he left CCA-Leavenworth in February of 2011, he had suffered "substantial harm" or had reason to suspect that Dr. Grote's treatment for his scabies rash would result in substantial harm.  The complaint alleges that plaintiff first realized on October 16, 2013, that defendant's deliberate indifference had caused avascular necrosis.  Petition (Doc. #1), ¶ 26 (on October 16, 2013, plaintiff learned that avascular necrosis probably caused by steroids prescribed by defendant); see also id., ¶ 25 (plaintiff diagnosed with avascular necrosis on September 12, 2013).

Defendant next argues that plaintiff's Section 1983 accrued by March of 2011, when a

-11-

medical provider told plaintiff of potential problems related to Dr. Grote's treatment. In support of his argument, defendant refers to plaintiff's allegations in a complaint in a separate lawsuit. Defendant Stewart Grote, D.O.'s Suggestions In Support Of His Motion For Judgment On The Pleadings (Doc. #11) at 4-5 (citing Petition (Doc. #1 in Cox II), ¶¶ 13-15). Neither party addresses whether on a Rule 12(c) motion, the Court can properly consider pleadings from a prior lawsuit. Generally, when deciding a Rule 12(b)(6) motion to dismiss, the Court may not look beyond the four corners of the instant complaint. Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 961 (10th Cir. 2001). Two exceptions to this rule permit the Court to consider (1) indisputably authentic copies of documents if plaintiff referred to them in the complaint and the documents are central to the claims and (2) facts which are subject to judicial notice. See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (if document referred to in complaint but not attached to it, and is central to plaintiff's claim, defendant may submit indisputably authentic copy to be considered on motion to dismiss); Fed. R. Evid. 201(b) (judicially noticed fact must be one not subject to reasonable dispute because it is generally known within territorial jurisdiction of trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned). Plaintiff's complaint in a prior case in this District is subject to judicial notice, but the complaint may only be considered to show its contents, "not to prove the truth of matters asserted therein." Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Accordingly, the Court can only consider the fact that plaintiff alleged that in March of 2011, a medical provider told him that he may suffer future problems from Dr. Grote's treatment. By itself, plaintiff's prior allegation does not establish that in March of 2011, he had suffered "substantial harm" or had reason to suspect that Dr. Grote's deliberate indifference to his scabies rash would result in substantial harm.

Based on the pleadings in this case, on October 16, 2013, plaintiff learned that Dr. Grote's treatment had caused him substantial harm.   See Petition (Doc. #1), ¶ 26.   Within two years, he filed suit against Dr. Grote.   See Civil Complaint (Doc. #1 filed in D. Kan. No. 15-3189-CM). Judge Murguia dismissed plaintiff's action without prejudice.   See Order (Doc. #47 filed in D. Kan. No. 15-3189-CM).   Plaintiff refiled the instant action within six months of the dismissal. For purposes of the present motion, defendant does not dispute that under the savings statute, K.S.A. § 60-518, plaintiff's complaint relates back to the date that he filed the complaint in Cox II, D. Kan. No. 15-3189-CM.   Therefore, the Court overrules defendant's motion to the extent it seeks dismissal of plaintiff's Section 1983 claim based on the statute of limitations.

## IV.    Section 1983 Claim (Count II): Collateral Estoppel

Defendant argues that plaintiff's Section 1983 claim is foreclosed by collateral estoppel because Judge Crow made factual findings in Cox I which are dispositive of the claim in this case. Collateral estoppel prevents the same parties from relitigating an issue that a court has conclusively determined in a prior action.   Phelps v. Hamilton, 122 F.3d 1309, 1318 (10th Cir. 1997); see Jackson Trak Group, Inc. v. Mid States Port Auth., 242 Kan. 683, 690, 751 P.2d 122, 128 (1988). The doctrine of collateral estoppel attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment. B-S Steel of Kan., Inc. v. Tex. Indus., Inc., 439 F.3d 653, 662 (10th Cir. 2006); Arizona v. California, 530 U.S. 392, 414 (2000).   To properly invoke collateral estoppel, defendant must show that (1) the issue previously decided is identical to the issue presented in the current action; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is raised was a party, or in privity with a party, to the prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

B-S Steel, 439 F.3d at 662.

In Cox I, plaintiff asserted a Section 1983 claim against Dr. Grote related to his treatment in 2009 and 2010. After filing the complaint, Judge Crow directed plaintiff to show cause why Minneci v. Pollard, 132 S. Ct. 617 (2012), did not bar his Bivens claim against "private prison employees." Order (Doc. #5 filed April 3, 2012 in D. Kan. No. 11-3215-SAC). In the order dismissing plaintiff's complaint, Judge Crow held that plaintiff could not assert a Section 1983 claim against "employees of federal, state, and private prisons." Order (Doc. #10 filed in D. Kan. No. 11-3215-SAC) at 3. Judge Crow likewise found that plaintiff could not assert a Bivens claim against such employees. Id.[3]

Defendant asserts that Judge Crow's ruling in Cox I bars plaintiff's Section 1983 claim in this action. For purposes of defendant's motion for judgment on the pleadings, the Court considers only whether defendant has shown that each element of collateral estoppel is satisfied. In Cox I, Judge Crow's order to show cause and order dismissing plaintiff's complaint rested on the assumption that Dr. Grote was an employee of CCA-Leavenworth. In this action, plaintiff has not alleged this fact. Instead, plaintiff alleges that Dr. Grote was "under contract with CCA to provide medical care to inmates at the Leavenworth Detention Center." Petition (Doc. #1), ¶ 41. Because the allegations of Dr. Grote's employment status are different in the two actions, the legal issue of the availability of a remedy under Section 1983 does not appear to be "identical." In addition, based on Judge Crow's statement of the relevant legal issues in the order to show cause, plaintiff did not have a full and fair opportunity to litigate the issue whether a Section 1983

---

[3]     Plaintiff appealed Judge Crow's rulings, but the Tenth Circuit dismissed plaintiff's appeal for lack of prosecution.

claim is available against a physician who is not a prison employee.[4]   For these reasons, the Court overrules defendant's motion to the extent it seeks dismissal of plaintiff's Section 1983 claim on the grounds of collateral estoppel.

**IT IS THEREFORE ORDERED** that <u>Defendant Stewart Grote, D.O.'s Motion For Judgment On The Pleadings</u> (Doc. #10) filed November 22, 2017 is **SUSTAINED in part**.   The Court dismisses Count I of the <u>Petition</u> (Doc. #1).   The Court otherwise overrules defendant's motion.

**IT IS FURTHER ORDERED** that <u>Plaintiff's Motion To Amend Petition</u> (Doc. #16) filed December 28, 2017 is **OVERRULED**.

Dated this 9th day of August, 2018 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

---

[4]        At this stage, Judge Crow's rulings in <u>Cox I</u> do not preclude plaintiff's claim under collateral estoppel principles.   Even so, the Court does not imply that plaintiff necessarily can pursue a Section 1983 claim against Dr. Grote.